# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class SAMUEL A. MEIXUEIRO**
**United States Army, Appellant**

ARMY 20120492

Headquarters, I Corps (Rear) (Provisional) (convened)
Headquarters, I Corps (action)
David L. Conn, Military Judge (arraignment)
David H. Robertson, Military Judge (trial)
Colonel Kurt A. Didier, Staff Judge Advocate

For Appellant:  Major Jacob D. Bashore, JA; Captain Brian D. Andes, JA (on brief).

For Appellee:  Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Robert A. Rodrigues, JA; Captain Benjamin W. Hogan, JA (on brief).

26 December 2013

---------------------------------
OPINION OF THE COURT
---------------------------------

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of attempted larceny, one specification of absence without leave, one specification of larceny, two specifications of making checks with the intent to defraud, and one specification of making and uttering worthless checks by dishonorably failing to maintain sufficient funds, in violation of Articles 80, 86, 121, 123a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 886, 921, 923a, 934 (2006) [hereinafter UCMJ].  The military judge sentenced appellant to a bad-conduct discharge, confinement for eighteen months, forfeiture of all pay and allowances, and reduction to the grade of E-1.  Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as

provided for a bad-conduct discharge, confinement for eleven months, forfeiture of all pay and allowances, and reduction to the grade of E-1.[1]

This case is before this court for review pursuant to Article 66, UCMJ. Appellant raises three assignments of error. One assignment of error, which merits discussion, but no relief, asserts that the military judge abused his discretion by treating each insufficiently funded check charged under a "mega-specification" of Article 134, UCMJ, as separate offenses for purposes of calculating the maximum sentence. The remaining assignments of error and those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) are without merit.

## BACKGROUND

While stationed at Joint Base Lewis-McChord, appellant opened a checking account with America's Credit Union (ACU) and established automatic deposit for his military paycheck to that account. He subsequently opened another bank account at the Armed Forces Bank (AFB) and re-directed his military pay to be automatically deposited into his AFB account instead. Despite depleting funds in his ACU account, appellant continued to write checks against it. From 13 September 2007 to 5 December 2007, appellant wrote forty-three personal checks against his ACU account, totaling $7,740.31. These checks were honored by ACU despite the zero balance in appellant's account.

During the providence inquiry and in the stipulation of fact, appellant admitted that he knew there was no money in the account to cover the forty-three checks he wrote against the ACU account. Appellant further admitted his ACU debit card stopped working before 13 September 2007 because there was no money in his ACU checking account, and he received at least sixteen overdraft notices from ACU prior to 14 November 2007. He also admitted he wrote checks against the depleted account because he wanted money to support his gambling habit.

These forty-three personal checks formed the basis for the Specification of Charge I, making and uttering worthless checks by dishonorably failing to maintain sufficient funds in his ACU account, a violation of Article 134, UCMJ. The checks were grouped into one specification, but each negotiated check was separately identifiable by check date, check number, amount, and payee. Thus, rather than alleging a continuing course of conduct, the specification describes forty-three

---

[1] Appellant was credited with one day of confinement against his sentence to confinement.

specific individual offenses.[2]  This practice results in what is commonly referred to as a "mega-specification."

## LAW AND DISCUSSION

Appellant contends the maximum punishment agreed upon by the military judge, government and defense prior to proceeding with the court-martial and during the court-martial was incorrect.  The appropriate maximum punishment is a question of law which we review de novo.  *United States v. Beaty*, 70 M.J. 39, 41 (C.A.A.F. 2011); *United States v. Inabinette,* 66 M.J. 320, 321 (C.A.A.F. 2007).  Although we "review a military judge's sentencing determination under an abuse of discretion standard, where a military judge's decision was influenced by an erroneous view of the law, that decision constitutes an abuse of discretion."  *Beaty*, 70 M.J. at 41 (internal citation omitted).

---

[2] On 20 December 2007, the Army Criminal Investigation Command (CID) brought appellant in for questioning regarding the forty-three checks referenced in the Specification of Charge I.  Appellant was "informed" by CID that his ACU account had been overdrawn and closed.  On 24 and 26 December 2007, appellant wrote two more checks from his closed ACU account totaling $425.75.  These two checks formed the basis for Specification 1 of Charge II, alleging a violation of Article 123a (a mega-specification).  On 4 December 2007, appellant opened another checking account with USAA Bank using a worthless deposit from his depleted ACU checking account.  After the ACU check was returned non-payable due to insufficient funds, appellant deposited $741.90 into his USAA account, bringing it into good standing. From 17 to 20 December 2007, he made fraudulent electronic deposits from his closed ACU account into the original USAA account as well as nine newly-opened USAA savings and checking accounts.  Within minutes of opening the nine new USAA accounts and submitting fraudulent electronic deposits from the closed ACU account, appellant transferred all the available funds from the new USAA accounts into the original USAA checking account.  Appellant then effectuated forty-seven debit transactions totaling $3,399.78 via his original USAA account.  This formed the basis for the Specification of Charge III, a violation of Article 121, UCMJ.  On 22 and 23 December 2007, appellant wrote three additional bad checks from the original USAA account which had been previously depleted of funds.  This formed the basis for Specification 2 (also a mega-specification) of Charge II, a violation Article 123a, UCMJ.  Appellant's original USAA account was frozen on 20 December 2007.  From 4 December 2007 to 2 January 2008, appellant made several attempts to withdraw money from his USAA account.  These acts formed the basis for the Specification of Charge IV; a violation of Article 80, UCMJ, by attempting to steal additional funds from USAA Bank.

MEIXUEIRO – 20120492

At the beginning of the court-martial, the military judge discussed the maximum punishment calculation with counsel on the record after previously holding a Rule for Courts-Martial [hereinafter R.C.M.] 802 session wherein this topic was discussed. The military judge stated in pertinent part:

> [T]here's a disagreement between government and defense; defense believing the maximum punishment initially was somewhere in the four year range; government coming to a twenty-six year, six month maximum confinement. I addressed with the defense the case of *United States v. Mincey* . . . and then provided the case law to the defense for those mega-specifications . . . . Defense, what is your position?[3]

Defense counsel then conceded that the government's twenty-six and a half year calculation of maximum confinement punishment was correct.

Appellant now claims that the military judge erred by treating each insufficiently funded check charged under the "mega-specification" of Charge I as a separate offense for sentencing. Appellant contends the maximum sentence for the forty-three worthless checks charged under Article 134, UCMJ, should be a period of confinement of only six months, rather than the twenty-one and a half years of confinement which results from considering each check separately.

While appellant recognizes that the Court of Appeals for the Armed Forces (CAAF) has held that bad checks charged under Article 123a, UCMJ, may be separately considered for sentencing by totaling what confinement each would have carried by itself to determine the maximum period of confinement, *United States v. Mincey*, 42 M.J. 376, 378 (C.A.A.F. 1995), he contends that *Mincey* is limited to Article 123a, UCMJ, and its holding cannot be extended to bad checks charged under Article 134, UCMJ. We disagree.

---

[3] We note that the defense counsel's assertion of maximum confinement "in the four year range" appears to be premised initially on his assumption that neither Charge I and its specification, (Article 134, UCMJ), nor Charge II, Specifications 1 and 2, (Article 123a, UCMJ), should be counted as a single offense for purposes of maximum sentence calculation as opposed to a maximum treating each check within the specification as a separate offense. In other words, the defense counsel initially appears to have also believed the two specifications of Article 123a, referencing five separate checks, should only be counted as two occasions for maximum sentence purposes.

Airman Mincey was charged with two "mega-specifications" under Article 123a, UCMJ, alleging a total of eighteen bad checks. Drawing on R.C.M. 1003(c)(1)(A)(i), the CAAF held that when pleaded in this manner, "the maximum punishment is calculated by the number and amount of the checks as if they had been charged separately, regardless whether the Government correctly pleads only one offense in each specification or whether the Government joins them in a single specification . . . ." *Id.* The court in *Mincey* did not restrict its holding to Article 123a, UCMJ, check offenses. The *Mincey* court stated "[R.C.M.] 1003(c)(1)(A)(i) authorizes punishment 'for each separate *offense*, not for each specification.'" *Id.* (emphasis in original). The court in *Mincey* looked to the offenses an accused has been convicted of to determine the maximum punishment. Notwithstanding the joinder of multiple instances under two specifications of the charge, Mincey was convicted of seventeen offenses of uttering bad checks, in violation of Article 123a, UCMJ. *Id.* The CAAF went on to state, "we now only hold that in **bad-check** cases, the maximum punishment is calculated by the number and amount of the checks as if they had been charged separately . . . ." *Id.* (emphasis added). The *Mincey* analysis has been extended to other check cases such as forgery, reasoning that "a forged check qualifies as a 'bad check.'" *United States v. Towery,* 47 M.J. 514, 515 (A.F. Ct. Crim. App. 1997), *petition denied*, 48 M.J. 414 (C.A.A.F. 1997). In *Towery*, the Air Force Court of Criminal Appeals held that "in cases where multiple, discrete instances of check forgery are pleaded (without objection) in one specification, the maximum punishment is calculated as if they had been charged separately." *Id.*

While appellant argues that *Mincey* does not extend to bad check offenses under Article 134, UCMJ, we do not interpret *Mincey* so narrowly, particularly in light of the specifics of this case. Both Article 134 and Article 123a, UCMJ, offenses require that a check be uttered and that there be insufficient funds in the corresponding account. The key discernible difference between the two offenses is that Article 134, UCMJ, requires the failure to maintain sufficient funds in one's account be **dishonorable**, whereas Article 123a, UCMJ, requires an **intent to defraud or deceive**. *Manual for Courts-Martial* (2012 ed.), pt. IV, ¶¶ 49.b, 68.c.

In crafting charges against an accused, the government has the option of charging each bad check written as a separate Article 134, UCMJ, offense, or it may promote judicial economy by streamlining charge sheets and trial proceedings by including all checks in a single Article 134, UCMJ, "mega-specification." The government's charging decision in these cases does not lessen the sentencing exposure for the accused given the nature of individual instances of misconduct. If it chose to do so, the government could have pleaded and proven separate specifications. In a case involving an Article 134, UCMJ, offense, each instance of check uttering may be counted separately for sentencing, despite being captured in a single specification. We perceive no meaningful distinction in the *Mincey* holding as it relates to charging and maximum punishment practices related to worthless checks charged under Article 134, UCMJ. The aggregation of the separate bad-

5

checks was an appropriate charging decision and, in this case, the military judge correctly held that each check could be considered separately in determining the maximum possible confinement for appellant's Article 134, UCMJ, violation.

Assuming, however, that the military judge erred in applying *Mincey* to bad-check offenses charged under Article 134, UCMJ, we now examine the appellant's assertion that he was "improvident" because he mistakenly believed the maximum punishment was twenty-six and a half years. We find this assertion is incongruous with appellant's course of conduct and wholly lacks merit.

A guilty plea "may be improvident because it is 'predicated upon a substantial misunderstanding on the accused's part of the maximum punishment to which he is subject.'" *United States v. Poole*, 26 M.J. 272, 274 (C.M.A. 1988) (quoting *United States v. Windham*, 15 U.S.C.M.A. 523, 525, 36 C.M.R. 21, 23 (1965)). The United States Court of Military Appeals indicated in *United States v. Harden* that the analysis of an accused's misunderstanding in that regard may "produce different results in seemingly similar cases . . . ." 1 M.J. 258, 260 (C.M.A. 1976). Our court found in *United States v. Walls*, 3 M.J. 882, 885 (A.C.M.R. 1977) that factors to be considered include: (1) the quality and quantum of the pretrial evidence dictated the accused to take a given course of action; (2) the degree of error in the misunderstanding of the maximum punishment; (3) the aspect of the maximum punishment that was misunderstood; (4) the relationship between the terms of the negotiated agreement and the correct maximum punishment; (5) whether the agreement struck was realistic in light of the totality of circumstances of the case; and finally, (6) the actual impact of the misunderstood element of the plea in light of the actual sentence imposed at trial.

Applying the foregoing principles to the facts of this case, we find that the pretrial evidence, from a practical viewpoint, dictated that it would be in the best interests of this appellant to negotiate a plea in an effort to gain the most acceptable terms possible under the circumstances. We further find that is precisely what occurred. Given the totality of the circumstances in this case, the pretrial agreement was both reasonable and realistic. The evidence of appellant's acts in this case was remarkable. The record clearly demonstrates the appellant was willing to submit a pretrial agreement for an eleven month confinement cap while under the notion that the maximum confinement was four years versus five and a half years.[4]

---

[4] If *Mincey* were to only apply to Article 123a, UCMJ, offenses and not Article 134, UCMJ, offenses, (making and uttering worthless checks by dishonorably failing to maintain sufficient funds), the maximum confinement exposure in this case would be five and a half years confinement—not four. In that light, appellant's confinement cap becomes even more beneficial.

The charges were referred to a general court-martial on 25 February 2012. The appellant's offer to plead was submitted on 23 March 2012. The convening

authority signed the agreement on 2 April 2012. The appellant was arraigned on 16 April 2012 by Judge Conn. Judge Conn was subsequently replaced by Judge Robertson. At the beginning of the court-martial on 15 May 2012, Judge Robertson stated:

> [I]n a previous 802 session with counsel for both sides present prior to trial today . . . the issue of what is the maximum punishment was also discussed. There's a disagreement between government and defense; defense believing that the maximum punishment was somewhere in the four year range; government coming to a twenty-six year six month maximum. ***I addressed with the defense the case of United States v. Mincey . . . and then provided the case law to defense for those mega-specs . . . .***

(emphasis added).

Based on the record of trial, it is clear to this court that appellant believed he was facing a maximum of only four years confinement versus twenty-six and half years ***at the time he submitted the deal to the convening authority***. This leads us to the unavoidable conclusion that appellant was indeed provident even if the military judge erred in his calculations because appellant was willing to submit a deal that included an eleven-month confinement ceiling believing the maximum was only "in the four year range."

Next we turn to the sentence. Even if we assume error under the circumstances, we discern no prejudice to the appellant in the military judge's calculation of the maximum punishment. We note appellant freely admitted the numerous occasions he uttered bad checks by dishonorably failing to keep money in his account. The providence inquiry and the stipulation of fact reveal the brazen nature of his fraudulent course of conduct, even while under criminal investigation. Additionally, appellant's defense counsel argued for the judge to impose eighteen months confinement and adjudge no punitive discharge.

We are confident that based on the entire record and the relative severity of appellant's course of conduct, the military judge, sitting alone as a general court-martial, would have imposed the same sentence—including at least eighteen months confinement—regardless of the difference between the maximum sentence to confinement we have embraced versus that which appellant urges us to adopt.

MEIXUEIRO – 20120492

## CONCLUSION

On consideration of the entire record, we hold the findings of guilty and sentence as approved by the convening authority correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

ANTHONY O. POTTINGER
Chief Deputy Clerk of Court

8